OPINION
Defendant-appellant, Thomas Proctor, Jr., appeals a conviction entered upon a jury verdict in the Butler County Court of Common Pleas on November 20, 1996. Appellant was found guilty of aggravated burglary, assault, and attempted rape. We affirm.
Early in the morning on May 24, 1996, Mashan Britt, while sleeping in her bed, awoke to find a man on top of her. Britt struggled with the attacker, but the attacker restrained her and placed his hands over her eyes and mouth. Britt testified that she was unable to see who her attacker was, but could see through his fingers that his lips "were sort of big." Britt testified that "he took his right hand down and tried to get to my underwear." She was only wearing a tee shirt and underwear.
Britt's three-year-old daughter, who was sleeping next to her, awoke and began screaming. The attacker hit the child, causing her to hit her head on the wall. Britt testified that she began "fighting back more, punching, and kicking and hitting," which caused the attacker to run from her bedroom. Britt stated that she followed the attacker as he was running towards her front door in order to see who he was. Britt testified that before he got to the door, the attacker turned around and hit her, knocking her to the ground. Britt was able to see that the attacker was wearing blue shorts with a grey stripe and that he had long dark hair that was short in front. After the attacker left her apartment, Britt attended to her daughter and called the police. Based upon Britt's description of the attacker and upon physical evidence found at the crime scene, appellant was arrested by the police.
Following a jury trial, appellant was found guilty of aggravated burglary, a violation of R.C. 2911.11(A)(3); two counts of assault, a violation of R.C. 2903.13(A); and attempted rape (see R.C. 2907.02[A][2] and 2923.02[A]). Appellant appeals this decision and presents three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST HIM FOR ATTEMPTED RAPE.
Appellant argues that there was insufficient evidence to convict him of attempted rape. Specifically, appellant claims that even if the evidence presented was believed, it would still be insufficient to prove attempted rape based upon the standard set forth in State v. Davis (1996), 76 Ohio St.3d 107.
The function of an appellate court when reviewing the sufficiency of the evidence underlying a criminal conviction is to examine the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of syllabus; State v. Crane (July 7, 1997), Butler App. No. CA96-12-257, unreported, at 2-3. The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Biros (1997), 78 Ohio St.3d 426,446, following Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 2789. When reviewing the evidence in an attempted rape conviction, the court may make "reasonable inferences to be derived therefrom in a light most favorable to the prosecution." Biros at 448.
The Ohio Supreme Court held in State v. Davis (1996), 76 Ohio St.3d 107, that attempted rape requires that the actor (1) intend to compel the submission to sexual conduct by force or threat, and (2) commit some act that convincingly demonstrates such intent. Id. at 114. In that case, the court found that evidence that the victim was seen pushing the defendant away, her body was found nude, and forensic evidence showing possible finger marks on the victim's thigh, was insufficient evidence to support a conviction of attempted rape. Id. The Ohio Supreme Court reasoned that:
 While removing the victim's clothing can amount to a "substantial step" toward the commission of rape, a defendant cannot be convicted of attempted rape solely on evidence that he removed the victim's clothing. There must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition.
Id. Therefore, we must determine if there is sufficient evidence that appellant's purpose was to commit rape or another sex offense such as gross sexual imposition.
The committee comment to gross sexual imposition in R.C.2907.05 states that gross sexual imposition is "an offense analogous to rape, though less serious. Its elements are identical to those of rape except that the type of sexual activity is sexual contact, rather than sexual conduct." State v. Sholler (Apr. 28, 1997), Clinton App. No. CA96-08-013, unreported, at 6.[1] Sexual conduct and sexual contact are defined as follows:
 "Sexual conduct" means vaginal intercourse between a male and a female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
R.C. 2907.01(A) and (B).
In the present case, Britt testified that she awoke finding "someone on top of me." She stated that "at one point, I realized that his hand had gone down to my underwear" and that "he took his right hand down and tried to get to my underwear." She also testified that the person was wearing only shorts and socks. She stated that she had seen appellant earlier in the evening wearing a shirt and the same shorts.
After having viewed the evidence in a light most favorable to the state, we find that a rational trier of fact could have found the essential elements of attempted rape proven beyond reasonable doubt. The present case is distinguishable from Davis in that Britt's testimony establishes that appellant had attempted to remove her clothing and that he had also already begun to remove his clothing, i.e. his shirt. The combination of appellant: (1) laying on top of Britt while she was in her bed; (2) being dressed only in shorts and socks; (3) removing his shirt prior to the attack; (4) covering her eyes to conceal his identity; (5) covering her mouth to keep her from crying out; and (6) attempting to remove Britt's underwear which covered her genital, pubic, and buttock regions, convincingly demonstrates appellant's intent to commit sexual conduct. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST HIM ON THE COUNT OF AGGRAVATED BURGLARY.
Appellant argues that his conviction for aggravated burglary was against the manifest weight of the evidence. Appellant contends that it was against the manifest weight of the evidence to conclude that he was the attacker.
The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact. In re Good (Feb. 24, 1997), Butler App. Nos. CA96-02-026, CA96-03-036, unreported, at 9, discretionary appeal denied (1997), 79 Ohio St.3d 1418. "The trier of the fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case." State v. Bailey (June 9, 1997), Preble App. No. CA96-12-020, unreported, at 4.
In order for a court of appeals to reverse the judgment of a trial court on the basis that the jury verdict is against the weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
The jurors were presented with the following evidence concerning the identity of the attacker: Britt testified that the attacker was wearing the same type of shorts that she had seen appellant wearing earlier in the evening. Britt testified that the attacker had the same build and hairstyle as appellant. A knife bearing appellant's fingerprint was found in Britt's bed. The police found four knives in appellant's apartment that are identical to the knife found in Britt's bed.
At the time of the attack, appellant was living with his parents in an apartment within the complex. Appellant's parents are the apartment managers of the complex and have a key to each apartment, which are kept in a key box inside their apartment. Britt testified that as the attacker left her apartment, she heard the jingling of keys. When the police arrived, Britt noticed that the door was locked after her attacker left the apartment. Evidence was presented that the only persons that had a key to Britt's apartment were appellant's parents and Britt. No evidence was presented showing that there was a forced entry by the attacker.
When appellant was interviewed the morning of the attack, photographs were taken of his knuckles showing that he had fresh scrapes and abrasions on the second and third knuckles of his right hand. Appellant testified that he was right-handed. Also, it had been raining the night of the attack. Britt testified that the attacker was dry, and that he did not leave wet footprints inside of Britt's apartment. The police were unable to find any footprints in the wet grass around the apartment complex. This would indicate that Britt's attacker lived within the apartment complex.
The combination of the facts that appellant had access to a key to Britt's apartment, appellant's knife was found in Britt's bed with his fingerprint on it, and Britt's description of the attacker would lead a reasonable juror to conclude that appellant was Britt's attacker. Accordingly, after having reviewed the record, we find that the jury did not "clearly lose its way." When considering the conflicts of the evidence and the credibility of the witnesses presented by appellant and the state, we find that the jury's guilty finding is supported by the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS.
On August 29, 1996, appellant filed a motion to suppress fingerprint evidence obtained by police. Appellant claimed that his fingerprints were obtained when he was illegally detained. On September 30, 1996, the trial court held a suppression hearing and overruled appellant's motion. Appellant contends that the trial court erred in overruling his motion to suppress the fingerprint evidence because appellant was illegally seized within the meaning of the Fourth Amendment of the United States Constitution. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Mason v. Murphy (Oct. 13, 1997), Warren App. No. CA97-02-016, unreported, at 4.
The Fourth Amendment provides the "right of the people to be secure * * * against unreasonable searches and seizures." The United States Supreme Court has long held that the "touchstone of the Fourth Amendment is reasonableness," which is measured in objective terms by examining the totality of the circumstances. Ohio v. Robinette (1996), U.S., 117 S.Ct. 417, 421.
A person has been "seized" within the meaning of theFourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. California v. Hodari (1991), 499 U.S. 621,627-628, 111 S.Ct. 1547, 1551, following United States v. Mendenhall (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877. This test is an objective test and not a subjective test (based upon the person's actual perception). Hodari, 499 U.S. at 628,111 S.Ct. at 1551.
In the present case, the circumstances surrounding the obtaining of appellant's fingerprints are as follows: Hamilton Police Detective Ed Bunns went to appellant's apartment at about 7:00 A.M. on May 24, 1996. Bunns asked appellant to come to the police station to be photographed and fingerprinted. Bunns informed appellant that his request was a result of an incident occurring in the apartment building earlier that morning. Bunns testified at the suppression hearing that appellant told him that he would come to the station but "he was asleep, he needed to clean up, and needed to get a ride up there, but he would come up there later in the morning." Bunns did not require appellant to go to the station.
When appellant did not appear by 10:00 A.M., Bunns requested that an officer go to appellant's apartment and offer him a ride to the station. Officer Melvin Gray testified that the police dispatcher said that he "was just being sent to give him a ride, and if he at any time refused, he didn't have to come with me." Gray testified that when he arrived at appellant's apartment, he told appellant that:
 Detective Bunns needed to see him, if it wasn't a problem. He was leaving the office later in the day and would like to see him at that time, and that I was there to give him a ride to headquarters.
Gray stated that appellant told him that he had promised to go in and see Bunns, but didn't have a ride earlier in the morning.
Before driving appellant to the station in his police cruiser, Gray did not give appellant a pat down search and no restraints were placed on him. Appellant rode to the station in the back seat of Gray's police cruiser. Gray stated that appellant did not ride in the front seat because "I put everyone in the back seat of my cruiser because I have my equipment in the front seat." Gray also testified that allowing appellant to ride in the front seat would have permitted appellant access to Gray's shotgun and his sidearm.
At the station, Gray waited for about half an hour while appellant was fingerprinted and photographed in order to give appellant a return ride to his apartment. Officer Dave Mick, who fingerprinted appellant, testified that he asked appellant if he had "a problem with any of this." Mick stated that appellant said: "No, * * * I want to get it over with" and "it's going to clear me anyway." Afterwards, Gray gave appellant a ride to his apartment, again in the back of his police cruiser.
A review of the record shows that a reasonable person placed in the same circumstances would not believe that he had been "seized." It is reasonable to conclude that Bunns' request for appellant to come to the station was simply a request and not an order. It is significant to note that Bunns did not require appellant to come to the station immediately. Bunns requested that a police officer offer to bring appellant to the station to accommodate Bunns' time schedule. Appellant said he needed a ride and accepted the offer. Gray's actions are also not indicative of an officer placing a person under arrest.
Accordingly, we find that appellant was not seized within the meaning of the Fourth Amendment. The trial court's decision overruling appellant's motion to suppress is supported by substantial credible evidence. Appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] R.C. 2907.02(A)(2) defines "rape" as follows: "No person shall engage in sexual conduct with another person when the offender purposely compels the other person to submit by force or threat of force."
R.C. 2907.05(A)(1) defines "gross sexual imposition" as follows:
 "No person shall have sexual contact with another who is not the of the offender" when the "offender purposely compels the person * * * to submit by force or threat of force."